NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA
Plaintiff & Counter–Defendant

v.

UNITED CATALYSTS, INC. Defendant
& Counter–Plaintiff

No. CIV.A.3:01 CV–86–S.

United States District Court,
W.D. Kentucky.

Jan. 2, 2002.

Edward H. Stopher, Scott Allen Davidson, Boehl, Stopher & Graves, Louisville, KY, for plaintiff.

Byron E. Leet, Lisa Catherine DeJaco, Wyatt, Tarrant & Combs, Louisville, KY, Donald R. Dunner, Richard L. Rainey, Michael J. McCabe, II, Christopher L. Crumbley, Finnegan, Henderson, Farabow, Garrett & Dunner, Atlanta, GA, for defendant.

## MEMORANDUM OPINION

SIMPSON, Chief Judge.

This matter is before the court on the respective motions of the plaintiff, National Union Fire Insurance Company of Pittsburgh, PA ("National Union") and the defendant, United Catalysts, Inc. ("UCI"), for summary judgment and partial summary judgment. Each party seeks judgment in its favor regarding National Union's defense and indemnification obligations to UCI for a judgment rendered against it in an action brought by Southern Clay Products, Inc. ("Southern Clay"). For the reasons set forth below, National Union's motion will be granted and UCI's motion will be denied.

Both parties have also requested oral argument on their respective motions. As we are able to render a decision based on the parties' respective memoranda, the

parties' requests for oral argument will be denied as moot.

## BACKGROUND

On June 3, 1988 Southern Clay brought an action against UCI in the United States District Court for the Southern District of Texas. Both companies manufacture organoclays, which are chemical compounds used to thicken and improve the performance of paint, oil, coatings, and similar substances. Southern Clay's complaint alleged UCI infringed its manufacturing process patents. The infringement allegedly occurred by UCI's "using one or more of the inventions claimed in the ... patent[s], and/or by making, using, offering for sale, and/or selling products made according to one or more of the inventions of the ... patent[s]." (Pltf.Mot.Summ.Judg.Exh. A).

In order to establish damages at trial, Southern Clay contended UCI advertised the improved performance of its infringing organoclays and targeted such advertisements at potential Southern Clay customers. Southern Clay further alleged UCI offered the infringing organoclays to Southern Clay's existing customers at reduced prices. Southern Clay claimed it was forced to reduce its own prices and suffered $5.4 million in damages as a result.

A jury rendered a verdict on behalf of Southern Clay and awarded $20.9 million in compensatory damages for patent infringement. The court later trebled the damage award based upon a finding of wilful infringement. The court also awarded interest and attorneys' fees. The final award totals over $80 million.

During the course of Southern Clay's action, UCI requested defense and indemnity under two commercial general liability ("CGL") policies issued by National. UCI also held two umbrella policies with National for liabilities that exceed the CGL policies' $2,000,000 limit. All four policies contain similar language regarding "advertising injury," which the parties agree is the only risk potentially invoked by Southern Clay's action. The CGL policy provisions regarding advertising injury coverage are as follows:

> This insurance applies to ... "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services, but only if the offense was committed in the coverage territory during the policy period; "Advertising Injury" means injury arising out of one or more of the following offenses:
> Misappropriation of advertising ideas or styles of doing business; [1]

(Pltf.Mot.Summ.Judg.Exhs.D, E).

National denied coverage under the policies claiming Southern Clay's action did not constitute an "advertising injury." National Union subsequently filed the present declaratory judgment action. UCI filed an Answer and Counter–Claim alleging National Union breached its contract with UCI by denying coverage for Southern Clay's action.

## DISCUSSION

In order to support a motion for summary judgment, the moving party must prove the absence of a genuine issue of any material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding a summary judgment motion, a judge's role is not to weigh the evidence or determine its truth, but to

**610**

determine if a genuine question of fact exists. *Id.* at 249, 106 S.Ct. 2505. In making these determinations, the court is to view all facts and inferences in a light most favorable to the nonmoving party. *White v. Turfway Park Racing Ass'n, Inc.,* 909 F.2d 941 (6th Cir.1990).

Under Kentucky law "[i]f there is any allegation in the complaint which potentially, possibly or might come within the coverages of the policy, then the insurance company has a duty to defend." *O'Bannon v. Aetna Casualty & Surety Co.,* 678 S.W.2d 390, 392 (Ky.1984); *see also Brown Foundation v. St. Paul Fire & Marine Ins. Co.,* 814 S.W.2d 273, 279 (Ky. 1991)("The insurance company must defend any suit in which the language of the complaint would bring it within the policy coverage . . . ."). The duty to defend is separate from and broader than the duty to indemnify. *See id.* at 279–80 (citation omitted). Therefore, if National Union does not have a duty to defend the underlying action, neither does it have a duty to indemnify.

UCI argues "the coverage question will turn on the true facts as judicially determined [in the underlying action] and not on the claims of either party, or on the allegations of the complaint against the putative insured." *Cincinnati Ins. Co. v. Vance,* 730 S.W.2d 521, 524 (Ky.1987). Therefore, according to UCI, if the facts brought out in Southern Clay's action reveal UCI misappropriated its advertising ideas or business styles, the action constitutes an "advertising injury." In *Brown,* the Kentucky Supreme Court examined *Vance.* The court specifically discussed "whether a duty to defend is based on allegations in the complaint or upon the ultimate duty to indemnify the loss . . . ." *Brown,* 814 S.W.2d at 276. It found *Vance* only decided the narrow question of whether an insurer who breaches its duty to defend is estopped from litigating its

coverage obligations. *Id.* at 280. According to the court, *Vance* did not define the duty to defend but merely stated that if the underlying complaint's allegations implicated a duty to defend and the insurer breached it, the insurer must pay the judgment if a duty to indemnify is later found. *Id.* Here, we find that Southern Clay's allegations do not implicate the duty to defend, therefore there was no breach by National Union and *Vance's* principles are not invoked.

Pursuant to the CGL policy language and Kentucky law, there are two components that must be satisfied in order for National Union's duty to defend to arise. First, Southern Clay's allegations in the underlying complaint must potentially constitute misappropriation of advertising ideas or styles of doing business. Second, there must be a causal connection between the misappropriation offense and UCI's advertising activities. Because we find that Southern Clay's allegations cannot constitute a misappropriation offense, we need not reach the issue of whether a causal connection between the offense and UCI's advertising activities exists.

Southern Clay's complaint alleged patent infringement by UCI's "using one or more of the inventions claimed in the . . . patent[s], and/or by making, using, offering for sale, and/or selling products made according to one or more of the inventions of the . . . patent[s]." (Pltf.Mot.Summ.Judg.Exh. A). According to UCI, the possibility of a misappropriation offense arises from Southern Clay's allegation that UCI offered infringing organoclays for sale. We disagree. While Kentucky courts have not defined the misappropriation offense, the Sixth Circuit, interpreting an exclusion provision identical to that found here, viewed it narrowly in the context of the common-law tort of misappropriation. *See Advance Watch*

*Co., Ltd. v. Kemper Nat'l Ins. Co.*, 99 F.3d 795, 801 (6th Cir.1996). The Sixth Circuit also defined "advertising idea" as "an idea for calling public attention to a product or business, especially by proclaiming desirable qualities so as to increase sales or patronage" and "style of doing business" as "a company's comprehensive manner of operating its business." *Id.*(quoting *Atlantic Mut. Ins. Co. v. Badger Medical Supply Co.*, 191 Wis.2d 229, 528 N.W.2d 486 (Wis.App.1995)). The court then concluded that misappropriation of advertising ideas or styles of doing business referred to "the unauthorized taking or use of interests other than those which are eligible for protection under statutory or common-law trademark law." *Id.* at 802. The Sixth Circuit later expanded its *Advance Watch* holding and found that as a matter of law an insurer does not have a duty to defend an "advertising injury" when the underlying action alleges patent infringement. *See United Nat'l Ins. Co. v. SST Fitness Corp.*, 182 F.3d 447 (6th Cir.1999).

Here, Southern Clay has only alleged patent infringement. Alleging the infringement occurred by UCI offering to sell the infringing product does not constitute a claim that UCI wrongfully took Southern Clay's ideas for selling the product or its manner of operating its business. Southern Clay's complaint does not reference its advertising ideas or business styles, nor does it allege that UCI improperly took them. Offering to sell an infringing product is merely one of the manners in which Southern Clay alleges UCI infringed its patents. There are therefore no allegations in the complaint that could possibly come within the CGL policies' coverage of advertising injury.

UCI argues there is at least the possibility of a misappropriation offense because Southern Clay's damage theory was based on business it lost due to UCI's advertising and business techniques. As discussed above, however, Kentucky law relies on the allegations in the complaint in determining whether a duty to defend arose. Southern Clay's complaint does not reference UCI's advertising or business techniques or make any allegations that UCI misappropriated such techniques from Southern Clay. It merely alleges patent infringement and, as a matter of law, patent infringement does not constitute "advertising injury." *See id.*

UCI also argues the *Advance Watch* and *United National* decisions are no longer applicable since they were not decided under the 1994 amendment to the Patent Act, which added "offers to sell" patented inventions as an infringing violation. *See* Uruguay Round Agreements Act, Pub.L. 103–465, § 533(a) (1994)(effective January 1, 1996). We find this amendment does not affect whether patent infringement constitutes an "advertising injury." The amendment merely adds another manner of patent infringement. Further, courts addressing the issue under the amendment have continued to find that patent infringement does not constitute "advertising injury." *See, e.g., Tradesoft Technologies, Inc. v. Franklin Mut. Ins. Co.*, 329 N.J.Super. 137, 746 A.2d 1078 (2000)(finding the rationale of cases holding that patent infringement does not constitute a misappropriation offense unaffected by the amendment.); *Maxconn Inc. v. Truck Ins. Exchange*, 74 Cal.App.4th 1267, 88 Cal.Rptr.2d 750 (1999)(finding that while the amendment may provide a casual connection between the injury and the insured's advertising activity, patent infringement does not constitute an "advertising injury."). In fact, the U.S. District Court for the Northern District of California recently revised a contrary opinion and held "[i]n light of ... recent case law, the [insured's] settlement, even if wholly comprised of damages for 'offer to sell' patent infringement, is not an 'adver-

tising injury' covered under the policies' indemnification clauses." *Everett Associates, Inc. v. Transcontinental Ins. Co.,* 2001 WL 1006767, *9 (N.D.Cal.)(revising 57 F.Supp.2d 874 (N.D.Cal.1999)).

## CONCLUSION

For the reasons stated above, we find Southern Clay's patent infringement action does not constitute "advertising injury" as defined in National Union's CGL policies. Therefore, we will grant National Union's motion and deny UCL's motion by a separate order entered this date.

## ORDER

For the reasons set forth in the memorandum opinion entered this date and the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that the Plaintiff's motion for summary judgment is **GRANTED** and the Defendant's motion for partial summary judgment is **DENIED.** The parties' request for oral argument is also **DENIED.**