BITUMINOUS CASUALTY
CORPORATION, Plaintiff
and Counterdefendant

v.

RPS COMPANY, Defendant, Counterplaintiff and Intervening
Defendant

v.

CIGNA PROPERTY & CASUALTY
CO., Intervening Plaintiff.

Civil A. No. 3:94CV–340–S.

United States District Court,
W.D. Kentucky.

Jan. 4, 1996.

William B. Orberson, Boehl Stopher & Graves, Louisville, KY, and Mark R. Feather, Brown, Todd & Heyburn, Louisville, KY, for plaintiff and counterdefendant, Bituminous Casualty Corporation.

Walter L. Porter, Barnett, Porter & Dunn, Louisville, KY, for intervening plaintiff, Cigna Property and Casualty Companies.

Robert L. Roark, Newberry, Hargrove & Rambicure, Lexington, KY and J. Stephen McDonald, McDonald, Walther, Roark & Gay, Lexington, KY, for defendant, counterplaintiff, and intervening defendant, RPS Company.

### MEMORANDUM OPINION

SIMPSON, Chief Judge.

This matter is before the court on the motions of the plaintiff, Bituminous Casualty Corporation (Bituminous) for summary judgment and of the defendant RPS Company (RPS) for partial summary judgment.

The matter was filed in this court by Bituminous invoking our diversity jurisdiction and seeking declaratory relief pursuant to 28 U.S.C. § 2201. RPS filed counterclaims seeking declaratory relief and asserting claims for breach of contract and bad faith.

### FACTS

The relevant facts are not in dispute. Bituminous is an Illinois corporation, authorized to do business in Kentucky. Bituminous is an insurance provider. RPS is a Kentucky corporation with its principal place of business in Lexington, Kentucky. RPS services ammonia refrigeration systems throughout Kentucky.

RPS purchased a "Commercial Lines Policy" of insurance from Bituminous which was

effective during the times pertinent to this lawsuit. On January 28, 1994, RPS was servicing the ammonia refrigeration system of Fischer Packing Company (Fischer) in Louisville, Kentucky. Due to a mishap, allegedly precipitated by an RPS employee, ammonia was released within the Fischer plant. The plant was evacuated by health and emergency officials for about 3½ hours, a few Fischer employees required medical treatment, and many hog carcasses were condemned by the United States Department of Agriculture. RPS demanded that Bituminous pay the claims asserted against RPS by Fischer for the damages it suffered during this incident. Bituminous has refused to pay, citing the pollution exclusion found within the policy, which reads in pertinent part as follows:

> (On a red and white "sticker" affixed to the cover of the policy)
>
> THIS POLICY DOES NOT PROVIDE POLLUTION LIABILITY COVERAGE
>
> (Attached as an endorsement to the policy)
>
> POLLUTION EXCLUSION
>
> It is agreed that the exclusion relating to the actual, alleged or threatened discharge, dispersal, release or escape of pollutants is replaced by the following:
>
> (1) **Bodily injury or property damage** arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants.
>
> (2) Any loss, cost or....
>
> Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.
>
> L1749b (4–86)

(Exhibit A to Bituminous' Memorandum, emphasis in exhibit).

RPS claims that the exclusion is ambiguous and must be interpreted in its favor. It asserts that the policy provides coverage for the incident involved in this matter. Furthermore, RPS contends that the doctrine of reasonable expectations requires that coverage be provided it under the policy.

## I

A party moving for summary judgment has the burden of showing that there is no genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (citations omitted).

Once a motion for summary judgment has been made and supported, summary judgment is appropriate unless the nonmoving party establishes a genuine issue as to a material fact. *Celotex*, 477 U.S. at 322, 333, 106 S.Ct. at 2552, 2558. Although the disputed issue need not be resolved conclusively in favor of the nonmoving party, that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968). The evidence must be construed in a light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir.1962).

## II

"Kentucky law governs the construction of the insurance policy in this diversity action." *Foster v. Kentucky Housing Corp.*, 850 F.Supp. 558, 560 (E.D.Ky.1994). The Kentucky Supreme Court explained many of the truisms of Kentucky insurance law in its response to questions certified to it by the Sixth Circuit Court of Appeals in *St. Paul Fire & Marine Ins. Co. v. Powell–Walton–Milward*, 870 S.W.2d 223 (Ky.1994). An insurance policy is to be liberally construed in favor of the insured, if the language is ambiguous, and the policy is susceptible to more than one reasonable interpretation. *Id.* Exclusions are strictly construed, and an exclusion must be clearly stated in order to apprise the insured of the limitation. *Id.* However, these rules do not contravene the

fact that the policy must receive a reasonable interpretation consistent with the parties' intent. *Id.* "Neither should a nonexistent ambiguity be utilized to resolve a policy against the company." *Id.* at 226. "[C]ourts should not rewrite an insurance contract to enlarge the risk to the insurer." *Id.* at 226–27.

■ RPS goes to great lengths to find ambiguity in the language of this exclusion. "Since there are no relevant factual disputes, the interpretation and construction of the insurance policy is a matter of law for the court." *Foster*, 850 F.Supp. at 560–61. The "terms of an insurance policy are to be enforced as drawn[.]" *Id.* at 561 (citations omitted). The courts of various jurisdictions have addressed matters similar to that presented in this case and come up with different opinions as to the effect of the pollution exclusion at issue. However, no controlling case has addressed the precise issue. We examined the terms of the exclusion and the policy and found no ambiguity. The policy exclusion is what it purports to be, an exclusion for liability based upon, *inter alia*, the release of pollutants. Bituminous has presented evidence that ammonia is a pollutant, in that it is an expected and actual, liquid or gaseous, irritant or contaminant. It has presented evidence that ammonia was released at the site of the incident and that the damages claimed by Fischer arise therefrom. RPS has not contested this proof.

■ RPS contends that the doctrine of reasonable expectations requires that it be provided coverage for this incident. That doctrine was discussed in *Simon v. Continental Ins. Co.*, 724 S.W.2d 210, 212–13 (Ky. 1987), where the court quoted R.H. Long's *The Law of Liability Insurance*, § 5.10B, as follows:

> The gist of the doctrine is that the insured is entitled to all the coverage he may reasonably expect to be provided under the policy. Only an unequivocally conspicuous, plain and clear manifestation of the company's intent to exclude coverage will defeat that expectation.

The doctrine of reasonable expectations is used in conjunction with the principle that ambiguities should be resolved against the drafter in order to circumvent the technical, legalistic and complex contract terms which limit benefits to the insured.

Inasmuch as the exclusion is not ambiguous and by its express terms excludes coverage for the damages concerned in this action, RPS's claims are without merit. An expectation of coverage under these circumstances would be unreasonable. Therefore, the motion of Bituminous for summary judgment will be granted by separate order.[1]

### *ORDER*

This matter having come before the court on the motions of the plaintiff, Bituminous Casualty Corporation (Bituminous) for summary judgment and of the defendant RPS Company (RPS) for partial summary judgment and the court having considered said motion and being otherwise sufficiently advised, **IT IS HEREBY ORDERED:**

1. The motion of the defendant, RPS, for partial summary judgment is **DENIED.**

2. The counterclaims of the defendant, RPS, against the plaintiff, Bituminous, are **DISMISSED WITH PREJUDICE.**

3. The motion of the plaintiff, Bituminous, for summary judgment is **GRANTED.**

4. The plaintiff, Bituminous, has no liability for coverage of the incident concerned in this suit under the Commercial Lines Policy presented to the court by reason of the pollution exclusion amended thereto by endorsement.

5. The claim of the intervening plaintiff, Cigna Property and Casualty Co., against the intervening defendant, RPS, is **DISMISSED WITHOUT PREJUDICE. JURISDICTION IS LACKING,** inasmuch as the amount in controversy does not exceed $50,-000.

**IT IS SO ORDERED.**

---

1. Since we have decided to deny RPS's cross-motion for summary judgment, Bituminous' argument that the motion was untimely is moot.